UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Jay Gagnon,
        Claimant

        v.                                    Case No. 15-cv-237-SM
                                              Opinion No. 2016 DNH 134
Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration,
        Defendant


**O R D E R**


        Pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), claimant,

Jay Gagnon, moves to reverse the Acting Commissioner's decision

denying his application for Disability Insurance Benefits under

Title II of the Social Security Act (the "Act"), 42 U.S.C.

§ 423, and Supplemental Security Income Benefits under Title XVI

of the Act, 42 U.S.C. §§ 1381-1383(c).  The Acting Commissioner

objects and moves for an order affirming her decision.


        For the reasons discussed below, claimant's motion is

granted to the extent he seeks a remand for further proceedings,

and the Acting Commissioner's motion is denied.

**Factual Background**

I.   <u>Procedural History</u>

On May 16, 2012, Gagnon filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that he had been unable to work since August 1, 2011, due to a "mental health diagnosis," "schizoaffective disorder bipolar type," and depression.  Administrative Record ("Admin. Rec.") at 83-84 and 172.  That application was denied (admin. rec. at 84-85), and claimant requested a hearing before an Administrative Law Judge ("ALJ") (admin. rec. at 93-94).

On November 18, 2013, Gagnon, his counsel, and a vocational expert appeared before an ALJ, who considered claimant's application <u>de</u> <u>novo</u>.  Admin. Rec. at 34-62.  At the hearing, Gagnon amended his alleged onset date to March 15, 2012.  Admin. Rec. at 36, 147.  On December 18, 2013, the ALJ issued his written decision, concluding that Gagnon had medically determinable impairments, but that none of them were severe, as that term is defined in the Act.  <u>Id</u>. at 22.  Therefore, the ALJ concluded, Gagnon was not disabled.  <u>Id</u>. at 28.

Gagnon then sought review of the ALJ's decision by the Appeals Council.  Admin. Rec. at 8 - 14.  By notice dated April 14, 2015, the Appeals Council denied Gagnon's request for review.  <u>Id</u>. at 1 - 6.  Accordingly, the ALJ's denial of

Gagnon's application for benefits became the final decision of the Acting Commissioner, subject to judicial review. Id. at 1.

Subsequently, Gagnon filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence. Gagnon then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 8). In response, the Acting Commissioner filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 10). Those motions are pending.

II. Stipulated Facts.

Pursuant to this court's Local Rule 9.1, the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 12), need not be recounted in this opinion. Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I. "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings and credibility

determinations made by the Commissioner are conclusive if
supported by substantial evidence.  See 42 U.S.C. §§ 405(g),
1383(c)(3).  See also Ortiz v. Secretary of Health & Human
Services, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial
evidence is "such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion."  Consolidated
Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is something
less than a preponderance of the evidence, so the possibility of
drawing two inconsistent conclusions from the evidence does not
prevent an administrative agency's finding from being supported
by substantial evidence.  Consolo v. Federal Maritime Comm'n.,
383 U.S. 607, 620 (1966).  See also Richardson v. Perales, 402
U.S. 389, 401 (1971).

     This court's review of the ALJ's decision is, therefore,
both limited and deferential.  The court is not empowered to
consider claimant's application de novo, nor may it undertake an
independent assessment of whether she is disabled under the Act.
Rather, the court's inquiry is "limited to determining whether
the ALJ deployed the proper legal standards and found facts upon
the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31,
35 (1st Cir. 1999).  Provided the ALJ's findings are properly
supported by substantial evidence, the court must sustain those
findings even when there may also be substantial evidence

supporting the contrary position.  Such is the nature of judicial review of disability benefit determinations.  See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981).

II.  The Parties' Respective Burdens.

An individual seeking SSI and/or DIB benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  See also 42 U.S.C. § 1382c(a)(3).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that his impairment prevents him from performing his former type of work.  See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985); Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).  If the claimant demonstrates an inability to perform his previous work, the burden shifts to the Commissioner

to show that there are other jobs in the national economy that he can perform, in light of his age, education, and prior work experience.  See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. §§ 404.1512(f) and 416.912(f).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Acting Commissioner's motion to affirm her decision.

## Background - The ALJ's Findings

In concluding that Gagnon was not disabled within the meaning of the Act, the ALJ employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920.[1]  See generally Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  Accordingly, he first determined that Gagnon had not been engaged in substantial gainful employment since his alleged onset of disability: March 15, 2012.  Admin. Rec. at 22.  The ALJ noted the evidence in the record (and Gagnon's testimony) demonstrating that Gagnon had worked after this date, performing "odd jobs" in the community.  Id.  However, the ALJ pointed out, because Gagnon had not reported that income, which was received "under the table," "there [was] no way to track substantial

---

[1]    As summarized by the court in Diomede-Reynolds v. Astrue, No. CV-07-222-PB, 2008 WL 901337, at *1, n.2 (D.N.H. Apr. 1, 2008), "[w]hen determining whether a claimant is disabled, the ALJ is required to make the following five inquiries: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work." (citing 20 C.F.R. § 404.1520).

gainful activity." Id. Accordingly, the ALJ continued with the
sequential analysis.

The ALJ next concluded that Gagnon suffers from the
following medically determinable impairments: "mood disorder and
attention deficit and hyperactivity disorder." Id. But, the
ALJ determined that those impairments did not significantly
limit Gagnon's ability to perform basic work-related activities
for 12 consecutive months, and thus concluded that Gagnon did
not have a "severe impairment or combination of impairments"
under 20 C.F.R. §§ 4041521 et seq. and 416.921 et seq. through
the date of his decision.

In making that determination, the ALJ considered Gagnon's
mental health diagnosis as well as Gagnon's allegations relating
to his symptoms.  The ALJ also considered the medical opinions
and reports of Monadnock Family Services practitioners Dr.
Richard Stein, Dr. Marianne Marsh, and counselor James Wood,
LCMHC, all of whom treated claimant, as well as the evaluations
of Dr. Evelyn Harriott, who completed a psychiatric evaluation
for the claimant's application for state APTD benefits, and Dr.
Michael Schneider, a non-examining state agency medical
consultant.  The ALJ concluded that the objective medical
evidence did not support claimant's allegations, and that

Gagnon's "symptom complaints [were] not credible to the extent alleged."  Admin. Rec. at 23 (citations omitted).

Because he concluded that Gagnon had a medically determinable mental impairment, the ALJ then considered the four functional areas set forth in 20 C.F.R. § 416.920a: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.

The ALJ found that Gagnon had mild impairment in activities of daily living, due to lack of motivation.  In support of that determination, he cited the evaluations of Drs. Harriott and Schneider.  The ALJ also noted that Gagnon had lived with friends for two years, taken care of his own space, cleaned up after his dog, and, while living at the Monadnock Family Services group home, cleaned up the common area, helped his housemates, and took a cooking class (but stopped after the first class because Gagnon believed group home staff were having him teach other residents to cook).

Regarding social functioning, the ALJ found that Gagnon had no more than mild impairment, also due to lack of motivation. He again cited to Dr. Harriott's report in support of his determination, and noted that Gagnon had lived with friends for two years, reported smoking marijuana two to three times a week

with friends and family, and reported engaging in social
networking on-line.  The ALJ also noted that Gagnon reported
spending time with peers to Dr. Marsh.

In conjunction with his analysis of Gagnon's social
functioning, the ALJ considered Gagnon's "reported intolerance
of others," but found that Gagnon's work history did not support
this allegation.  Admin. Rec. at 26 - 27.  The ALJ noted that
Gagnon had "worked three jobs for two years each, and a fourth
job for over four years, with two of the employers re-hiring
him.  Additionally, he had been able to go out into the
community and work odd jobs under the table for two years."  Id.
at 27.  Finally, the ALJ cited Dr. Stein's observation that,
"despite the claimant's reported inability to work with others,
'on a personality inventory, he seems to identify with a great
many character traits consistent with getting along with
others.'"  Id. (citations omitted).

With respect to Gagnon's concentration, persistence and
pace, the ALJ again found that Gagnon had no more than mild
impairment.  In support of that determination, he cited Dr.
Harriott's report that Gagnon had "never-seldom" functional loss
in this area, and Dr. Stein's observation that Gagnon "was very
intelligent and perhaps would do well as a tenured professor."
Admin. Rec. at 27.  The ALJ further considered that Gagnon

reported "being addicted" to video games, playing chess and "being a science geek," activities which the ALJ noted require "exceptional concentration, persistence and pace."  The ALJ further noted that Gagnon's sensorium, including memory and concentration, "was noted as normal."  Id.

Finally, considering episodes of decompensation, the ALJ found that the record did not reflect any episodes of decompensation of extended duration.  Id.

Based on all of the foregoing, the ALJ concluded that Gagnon's mental impairments were not severe, and that Gagnon was not under a disability from March 15, 2012, through the date of the decision.  Accordingly, the ALJ concluded his analysis at step two, and did not progress to the remaining steps of the disability evaluation process.

### Discussion

Claimant challenges the ALJ's decision, asserting that he erred in finding that Gagnon does not have severe mental health impairments.  The Acting Commissioner disagrees.

It is well established in this circuit "'that the Step 2 severity requirement is ... to be a de minimis policy, designed to do no more than screen out groundless claims.'"  McQuaid v.

11

Colvin, No. 15-CV-08-SM, 2015 WL 6674919, at *6 (D.N.H. Nov. 2,
2015) (quoting McDonald v. Sec'y of Health & Human Servs., 795
F.2d 1118, 1124 (1st Cir. 1986)).

> Under Social Security Ruling ("SSR") 85-28, "a finding
> of 'non-severe' is only to be made where 'medical
> evidence establishes only a slight abnormality or
> combination of slight abnormalities which would have
> no more than a minimal effect on an individual's
> ability to work.'" McDonald, 795 F.2d at 1124
> (quoting SSR 85-28, 1985 WL 56856, at *3 (S.S.A.
> 1985)).  Thus, a proper analysis at step two should
> "do no 'more than allow the [Acting Commissioner] to
> deny benefits summarily to those applicants with
> impairments of a minimal nature which could never
> prevent a person from working.'"  Id. at 1125 (quoting
> Baeder v. Heckler, 768 F.2d 547, 553 (3d Cir. 1985))
> (emphasis added).

McQuaid, 2015 WL 6674919, at *6.  But, as this court has
previously stated, an error at step two may, under certain
circumstances, be harmless:

> Typically, arguments of the sort advanced by claimant
> can be resolved fairly easily.  Provided the ALJ
> continues the sequential analysis and considers those
> impairments previously deemed "not severe" later in
> the analysis, this court has consistently held that
> any error at step two was harmless.  See, e.g., Chabot
> v. U.S. Soc. Sec. Admin., No. 13-CV-126-PB, 2014 WL
> 2106498, at *9 (D.N.H. May 20, 2014) (collecting
> cases).  Here, however, because the ALJ concluded that
> none of claimant's impairments was severe, [he] ended
> [his] analysis and concluded that claimant was not
> disabled.  Consequently, the court must carefully
> scrutinize [his] step two conclusion.

Kalloch v. Colvin, No. 14-CV-520-SM, 2016 WL 1171506, at *5
(D.N.H. Mar. 24, 2016).  While the ALJ's Step Two discussion is

detailed and thorough, he erred in finding that Gagnon had not
met the minimal showing required at step two.

The ALJ's determination is problematic for several reasons.
First, the ALJ largely disregarded the majority of the medical
opinions in the record, including the opinions of Gagnon's
treating physicians and the opinion of the state medical
consultant.  Instead, the ALJ focused his analysis on statements
Gagnon made at appointments with those providers.  From those
statements, the ALJ drew independent conclusions that Gagnon's
mental health impairments imposed no more than a minimal effect
on his ability to work.  That is impermissible.  See Manso-
Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st
Cir. 1996) ("With a few exceptions (not relevant here), an ALJ,
as a lay person, is not qualified to interpret raw data in a
medical record.").

An obvious illustration of the point is the ALJ's treatment
of the medical reports of James Wood, LCMHC, with whom Gagnon
participated in group therapy for anger management.[2]  The ALJ
noted the following:

---

[2]    In his order, the ALJ indicated that Gagnon was a "no show"
at his scheduled June 11, 2013, appointment with Wood.  Admin.
Rec. at 25.  However, that finding is contradicted by the
record, which reflects Gagnon's attendance (see admin. rec.

On July 16, 2013, Mr. Wood noted that the claimant enjoyed being confrontational and "being right," was defensive when asked about his need to have the last word, but was also able to re-orient to the group and was "contributing well with good insight."  On July 30, 2013, Mr. Wood noted that the claimant requested to leave the group until the summer was over "so he can make some money when the weather is good."  These observations are not indicative of disability, nor are they indicative of severe mental health impairment.

Admin. Rec. at 25 (citations omitted).  It is not entirely clear what the ALJ was relying upon in concluding that Mr. Wood's observations were "not indicative of disability" or "severe mental health impairment."  What is clear, however, is that, while an ALJ is "not 'precluded from rendering common-sense judgments about functional capacity based on medical findings,'" "the ALJ cannot 'overstep the bounds of a lay person's competence and render a medical judgment.'"  George v. Astrue, No. 11-cv-356-PB, 2012 WL 2061699, at *8 (D.N.H. Jun. 7, 2012)

---

363), as well as the parties' joint statement of facts (see document no. 12, p. 11).

During the June 11, 2013, appointment, Wood noted that Gagnon's mood/affect were "variable, impulsively exaggerated," his thought process and orientation was "narcissistic" and, regarding Gagnon's behavior/functioning, recorded: "[Gagnon is] reporting [that he is] resisting being open to other people, which is anathema to him, naturally, yet he is trying to do his best[;] his resistance was validated as his comfort zone is very small[;] stress level is high for Jay."  Admin. Rec. at 363.

(quoting <u>Gordils v. Sec'y of Health & Human Servs.</u>, 921 F.2d 327, 329 (1st Cir. 1990)).[3]

The ALJ's conclusions are also doubtful given: (1) that they are inconsistent with the majority of the medical opinions in the record; and (2) there are multiple factual errors and inconsistencies reflected in the ALJ's order.  The clearest example is the ALJ's treatment of Dr. Marsh's opinion.  Dr. Marsh opined that Gagnon had marked limitations in his ability to maintain attention and concentration for extended periods, to perform activities within a schedule and maintain regular attendance, to work in coordination with or proximity to others without being distracted by them, to accept instruction and respond appropriately to criticism from supervisors, and to get along with co-workers or peers without distracting them or exhibiting behavior extremes.  Admin. Rec. at 375–77.  Dr. Marsh further opined that Gagnon's symptoms included:

> significant emotional dysregulation and mood swings, anger, irritability, hostility, and tremendous interpersonal difficulties.  Minor incidents [could] result in rage, impulsivity, and inappropriate behavior.  He has road rage, numerous tickets, threatens people, and has a history of assaultive

---

[3]     Another example is the ALJ's determination that Gagnon had mild impairment with respect to activities of daily living and social functioning "due to <u>lack of motivation</u>."  Admin. Rec. at 26 (emphasis added).  The ALJ cites no medical evidence or opinions in the record that support of his determination that Gagnon suffers from a "lack of motivation."

behavior.  He is unable to spend much time with others
and clearly could not function in a work setting.

Admin. Rec. at 380.

In determining that Dr. Marsh's opinion warranted little
weight, the ALJ noted that Marsh had seen Gagnon only three
times before completing her evaluation, and that the symptoms
she reported were not consistent with the record.  The ALJ is
correct that Dr. Marsh had seen Gagnon only three times before
rendering her evaluation.  But, with respect to the ALJ's
determination concerning the purportedly inconsistent record,
the Acting Commissioner concedes that "the relevance of some of
the evidence" the ALJ cited in support "was less clear."
Document No. 10-1, p. 12.  For example, the ALJ discounted Dr.
Marsh's opinions, in part, because he found that Dr. Marsh's
"assessment that the claimant was working on anger management
was unfounded."  Admin. Rec. at 25.  That determination,
however, was premised on the ALJ's incorrect finding that Gagnon
had not attended the June 11, 2013, appointment.  Admin. Rec. at
25; see supra, note 2.

The ALJ's decision contains several other errors.  For
example, the ALJ gave little weight to Dr. Stein's[4] opinions.

---

[4]    The ALJ referred to Dr. Stein as "Dr. Stearn" at various
points in his order.  See, e.g., Admin. Rec. at 27.

This was, in part, because the ALJ found that Dr. Stein's
conclusion – that Gagnon had "marked limitation" in maintaining
concentration for extended periods because Gagnon could be
"intermittently consumed by irrational intense anger" – was not
supported by the record.  Admin. Rec. at 27 (quoting Admin. Rec.
at 356).  But, as the Acting Commissioner concedes, the record
"is replete with examples of [Gagnon] overreacting to mundane
situations."  Document No. 10-1, at p. 12 n.7.  Indeed, at the
hearing, Gagnon testified that he had recently gotten into an
altercation at McDonald's with another customer who cut him in
line; Gagnon "smacked [the customer] upside the head with a
McDonald's tray."[5]  Admin. Rec. at 49.

The ALJ also erroneously interpreted the medical opinion
upon which he most heavily relied: Dr. Harriot's report.  The
ALJ misread Dr. Harriott's checked assessment of Gagnon's
functions.  For each category, daily activities, social
interactions, and task performance, Dr. Harriott was given the

---

[5]     The ALJ also discounted Dr. Stein's opinion because he saw
Gagnon only "three times" prior to completing his functional
evaluation.  As the Acting Commissioner points out, Dr. Stein
initially completed the functional evaluation at Gagnon's
January 25, 2013, appointment, at which point he had only met
with Gagnon three times.  Admin. Rec. at 359.  But, Dr. Stein
and Gagnon updated the functional evaluation at Gagnon's
appointment on January 28, 2013, at which point Dr. Stein had
met with Gagnon four times.  Id.

option to check a box assessing "degree of functional loss" as: "none," "slight," "moderate" or "marked."  For each category, Dr. Harriott checked that Gagnon had "slight" or "seldom" functional loss.  See Admin. Rec. at 245-46.  The ALJ interpreted those check marks as indicating "none-to-slight" or "none-to-seldom" functional loss in each category.  See Admin. Rec. at 24, 26-27.  While that may seem a minor misconstruction, it bears notice, given the ALJ's substantial reliance on Dr. Harriot's report.

Finally, the ALJ relied heavily on Gagnon's work history in his analysis.  See, e.g., Admin. Rec. at 26-27 ("I note that [claimant] has worked consistently above the substantial gainful activity level 1994 through 2008, 2010 and 2011. . . . This work history does not support the claimant's inability to work with others."); see also Admin. Rec. at 27 (noting that Dr. Stein's observation that claimant could be consumed by anger was "especially not supported by the work history;"); id. at 28 (noting that Dr. Marsh's opinion is not supported by Gagnon's work history).  The ALJ's reliance was problematic because the work history discussed largely predated Gagnon's alleged onset date.  While Gagnon did report that his difficulties in getting along with others dated back to childhood, there is also evidence in the record suggesting that Gagnon's symptoms were

becoming progressively worse.  For instance, Dr. Stein's initial
evaluation reports: "[Gagnon] was referred by his friend's
landlord's concern about his <u>increasing reclusive isolation and
self neglect</u>.  He reports lifelong difficulties in
socialization, schooling, occupational functioning and
<u>consequently increasing</u> alienation. . . . Heretofore he has not
seen himself as ill or defective, except insofar as other people
recurrently have conveyed his functional and interpersonal
difficulties to him."  Admin. Rec. at 234 (emphases added); <u>see
also</u> Admin. Rec. at 359 (Dr. Stein's Functional Evaluation:
Gagnon's "[symptoms and functional limitations described in
questionnaire developed in] 1982 or 1983, age 6 or 7, [and]
<u>progressively worse since</u>.") (emphasis added).  While the ALJ
may consider all evidence in the record – including Gagnon's
pre-onset work history – it was improper to rely so heavily on
Gagnon's pre-onset work history while failing to acknowledge
evidence in the record suggesting that Gagnon's mental
impairments were progressive in nature.

Taken alone, these factual errors might not be significant
enough to warrant remand.  However, viewed in the aggregate, the
collective effect undermines a conclusion that the ALJ carefully
considered the factual evidence in the record.  <u>See Renaudette
v. Astrue</u>, 482 F. Supp. 2d 121, 132 (D. Mass. 2007) ("the ALJ's

decision is riddled with factual errors and misstatements.  The
cumulative effect of these mistakes undermines any confidence
either that the evidence in the plaintiff's case has been fully
and fairly considered or that the ALJ's decision was supported
by substantial evidence.")

As discussed above, in order to establish severity, Gagnon
"need only show that [his] impairment or combination of
impairments amounts to more than a 'slight abnormality' and has
more than a 'minimal effect' on [his] ability to perform work."
Rascoe v. Comm'r of Soc. Sec., 103 F. Supp. 3d 169, 184-85 (D.
Mass. 2015) (quoting McDonald, 795 F.2d at 1124).  Given that de
minimus burden, the ALJ's seemingly independent assessment of
the medical data in the record, and the multiple factual
inaccuracies contained in the ALJ's order, the court finds that
this matter must be remanded for clarification of the ALJ's
findings.

### Conclusion

For the foregoing reasons, as well as those set forth in
the claimant's legal memorandum, claimant's motion to reverse
the decision of the Acting Commissioner (document no. 8) is
granted, to the extent he seeks a remand for further
proceedings.  The Acting Commissioner's motion to affirm her
decision (document no. 10) is denied.

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the ALJ dated December 18, 2013, is vacated and this matter is hereby remanded for further proceedings consistent with this order.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.


**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 10, 2016

cc:  Bennett B. Mortell, Esq.
     Michael T. McCormack, Esq.